*In re* SZ

Docket No. 252144. Submitted June 3, 2004, at Lansing. Decided June 22, 2004, at 9:10 A.M.

The Family Independence Agency petitioned the Ogemaw Circuit Court, Family Division, for the termination of Verna Al-Murisi's parental rights over SZ, SZ, and CZ, minors. The court, Eugene I. Turkelson, J., allowed substituted service on the respondent after police agencies were unable to personally serve process on her. The substituted service was by publication and was based on neither testimony nor a motion and affidavit as required by MCR 3.920(B)(4), but on a motion and proofs of nonservice. The respondent appealed, claiming that the service violated her rights under the court rule, thereby requiring a reversal of the termination of her parental rights.

The Court of Appeals *held*:

MCL 712A.13 is the controlling statute regarding substituted service, and jurisdictional issues are decided in favor of the statute. Unlike MCR 3.920(B)(4), that statute does not limit what a trial court can rely on when determining the propriety of substituted service. Under the statute, a trial court is permitted to consider evidence other than testimony or motions with affidavits when determining whether personal service was impracticable. The trial court did not err in relying on the petitioner's motion and proofs of nonservice in authorizing service by publication and in asserting jurisdiction over the respondent.

Affirmed.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — SUBSTITUTED SERVICE.

MCL 712A.13 controls the service of summons in proceedings for the termination of parental rights and does not limit what a trial court can rely on when determining the propriety of substituted service.

*Darris B. Richards*, Prosecuting Attorney, and *Jason Jansma*, Assistant Prosecuting Attorney, for the petitioner.

*Wm. P. Jennings & Wm. P. Jennings, Jr., P.C.* (by *William P. Jennings, Jr.*), for the respondent..

Before: HOEKSTRA, P.J., and O'CONNELL and DONOFRIO, JJ.

PER CURIAM. Respondent Verna Al-Murisi appeals as of right the trial court's order terminating her parental rights to three minor children pursuant to MCL 712A.19b(3)(a)(ii) and (j). She challenges the trial court's failure to follow MCR 3.920(B)(4) and its assertion of jurisdiction over her. We affirm.

In March 2003, the trial court authorized the petition for temporary custody of the three minor children. The trial court determined that there was probable cause to believe the facts in the petition were true, including that the whereabouts of respondent, who had a substance abuse problem, were unknown, the children's father was deceased, and the children's paternal grandparents were no longer capable of caring for the children because of health problems. Weeks later, at a preliminary hearing at which respondent was present, the trial court continued placement of the children with the Family Independence Agency (FIA) on the ground that the children would be at risk if returned to respondent's care because she suffered from substance abuse and had no proper home for the children.

In April 2003, petitioner filed a supplemental petition seeking termination of respondent's parental rights for numerous reasons. The record is not clear concerning whether respondent received the copy of the summons sent by ordinary mail regarding the upcoming jury trial. However, the record is clear that a later attempt to personally serve a copy of this summons was

unsuccessful. Nonetheless, respondent was present at the May 2003 adjudicative jury trial. After testimony from two of the minor children, their paternal grandmother, two FIA protective services workers, and respondent, the jury found that one or more of the statutory grounds alleged in the petition had been proven regarding the three minor children. The trial court ordered the children to remain temporary wards of the court and a dispositional hearing was set for June 2003.

Because respondent was not personally served with a termination petition and summons before the scheduled June 2003 dispositional hearing and was not present at the hearing, the trial court adjourned the hearing to July 2003 in order for personal service to be attempted. Personal service on respondent was attempted, but it was unsuccessful. The Wayne County Sheriff's office noted that the given street address was incorrect, and that, according to the occupant of the house, respondent did not reside there at the time that service was attempted.

Before adjourning the July 2003 hearing at which respondent was not present, the trial court stated that the given address was apparently "two or three address changes ago." Therefore, the trial court suggested that petitioner file an affidavit of diligent effort, and the trial court would order service by publication. Meanwhile, the trial court ordered that efforts to personally serve respondent be continued by sending process servers to the last known address. Petitioner's attorney agreed to file an affidavit with the court requesting publication and also stated that personal service upon respondent would be attempted by the Michigan State Police fugitive team. The trial court said that, if the fugitive team were unable to personally serve respondent within seven days, publication should occur.

On August 12, 2003, petitioner filed a motion for alternate service on the following ground:

> Several attempts have been made to serve Verna Al-Murisi through both mail or personal service to no avail. It is believed that Verna Al-Murisi is avoiding service[;] due to failed attempts to serve Verna Al-Murisi we believe publication is the only option left.

The trial court granted this motion, and publication occurred on August 18, 2003, in *The Detroit Legal News*.[1]

At the August 27, 2003, hearing, the trial court stated that a number of attempts had been made to personally serve respondent, including the last one by a special services unit of the Michigan State Police. All these attempts had been unsuccessful. The attorney representing the FIA stated that respondent apparently was avoiding service. Noting that publication had already been ordered, the trial court stated that there was "not much we can do at this point" and the hearing was adjourned until September 18, 2003.

Respondent was not present at this termination hearing, although her attorney stated that she had spoken to respondent about three weeks earlier, at which time respondent indicated that she would be present. Respondent's attorney had not heard from respondent since then and did not know her current whereabouts. The trial court proceeded with the termination trial, although it acknowledged this placed respondent's attorney in a difficult position. Specifically, the trial court stated that it was forced into "the position where we had to publish" and that notice was

---

[1] Although respondent states in her appellate brief that publication in the *Ogemaw County Herald* was also undertaken, we found no evidence of such publication in the lower court record.

done. At this trial, no testimony was given, and the sole evidence submitted by petitioner was its termination report.

On October 15, 2003, the trial court issued its order terminating respondent's parental rights to the three minor children. In the last paragraph of the statement of facts in the trial court's written opinion, the court stated that service by publication upon respondent was required because "her whereabouts were again unknown."[2] This appeal ensued.

On appeal, respondent does not challenge the trial court's conclusions concerning the statutory factors leading to the termination of her parental rights. Rather, respondent first argues that the trial court erred in failing to comply with MCR 3.920(B)(4)(b) in ordering substituted service on respondent. According to respondent, petitioner's motion for alternate service was defective in that it failed to specify the facts upon which the court could order substituted service, and, thus, the trial court's subsequent order that authorized alternate service was in error.

Whether a trial court has personal jurisdiction over a party is a question of law that this Court reviews de novo. *In re Terry*, 240 Mich App 14, 20; 610 NW2d 563 (2000). Likewise, statutory interpretation is also a question of law that we review de novo. *In re Turpening Estate*, 258 Mich App 464, 465; 671 NW2d 567 (2003).

A parent of a child who is the subject of a child protective proceeding is entitled to personal service of a summons and notice of proceedings. MCL 712A.12;

---

[2] Respondent's failure to make her whereabouts known was also a significant factor in the court's order to terminate parental rights on the grounds that respondent had abandoned the children for ninety-one or more days and that there was a likelihood of harm to the children if they were returned to respondent's home.

MCR 3.920(B)(4)(a).[3] However, in cases in which personal service is impracticable, substituted service is permissible. MCL 712A.13; MCR 3.920(B)(4)(b). Substituted service is sufficient to confer jurisdiction on the court. *In re Mayfield*, 198 Mich App 226, 231; 497 NW2d 578 (1993).

Respondent argues that the trial court did not comply with applicable court rules, specifically MCR 3.920(B)(4)(b), when it permitted substituted service to be made in this case. MCR 3.920(B)(4)(b) provides:

> If the court finds, *on the basis of testimony or a motion and affidavit*, that personal service of the summons is impracticable or cannot be achieved, the court may by ex parte order direct that it be served in any manner reasonably calculated to give notice of the proceedings and an opportunity to be heard, including publication. [Emphasis added.]

Respondent contends that there was never any "testimony" or "a motion and affidavit" about the issue of respondent's availability for personal service. Therefore, the trial court did not comply with this court rule when it ordered service by publication.

Our review of the record reveals that while the trial court was provided information from other sources about the difficulty of personally serving respondent, there was never any testimony concerning this issue, i.e., no witnesses were questioned under oath regarding the attempts made to personally serve respondent. Nor was there a "motion and affidavit" for the court to rely upon when assessing respondent's availability for personal service. As respondent points out, petitioner's motion for alternate service did not include a separate

---

[3] Effective May 1, 2003, the rules governing juvenile proceedings were amended and moved to new MCR subchapter 3.900. MCR 3.920 corresponds to former Rule 5.920.

affidavit, and the statements made in petitioner's motion were generalized assertions that were too vague upon which to base an order for substituted service by publication. Because petitioner's motion failed to provide specific information, the trial court lacked sufficient information in the record to permit service by publication.

On the basis of the lack of testimony or a motion and affidavit in the record, it appears the trial court did not comply with MCR 3.920(B)(4)(b) when it determined personal service of the summons was impracticable or could not be achieved. However, respondent fails to discuss MCL 712A.13, the statutory provision that governs substituted service, and the conflict that may exist between MCL 712A.13 and MCR 3.920(B)(4)(b).

MCL 712A.13 is the controlling statute regarding substituted service and provides in part:

> Service of summons may be made anywhere in the state personally by the delivery of true copies thereof to the persons summoned: Provided, That if the judge is satisfied that it is impracticable to serve personally such summons or the notice provided for in the preceding section, he may order service by registered mail addressed to their last known addresses, or by publication thereof, or both, as he may direct.

In MCL 712A.13, there is no requirement that a court base its decision upon either testimony or a motion and affidavit. In fact, the statute does not refer to the evidence upon which the court could rely when determining the practicality of personally serving a party, let alone try to define or limit it. The wording of MCL 712A.13 is in keeping with former Rule 5.920 before it was amended and moved to MCR 3.920. Rule 5.920(B)(4) provided in relevant part:

(b) If personal service of the summons is impracticable or cannot be achieved, the court may direct that it be served by registered or certified mail addressed to the last known address of the party, return receipt requested.

(c) If the court finds service cannot be made because the whereabouts of the person to be summoned has not been determined after reasonable effort, the court may direct any manner of substituted service, including publication.

There appears to be no conflict between MCL 712A.13 and the former Rule 5.920 with respect to what the trial court may consider in determining whether substituted service is indicated. However, there appears to be a conflict between MCL 712A.13 and the current court rule set forth in MCR 3.920(B)(4)(b), because the current court rule restricts the type of evidence that a court can rely on when evaluating the need for substituted service.

Because this case involves the jurisdictional issue of notice requirements, the conflict between this statute and court rule is decided in favor of the statute. It is well-established that a failure to follow the court rules regarding notice requirements does not establish a jurisdictional defect, although a failure to provide the applicable statutory notice would. *In re Mayfield, supra* at 230-231, citing *In re Brown,* 149 Mich App 529, 540-542; 386 NW2d 577 (1986). Although the authority to determine rules of practice and procedure rests exclusively with the Michigan Supreme Court, it is not authorized to enact court rules that establish, abrogate, or modify the substantive law. *McDougall v Schanz,* 461 Mich 15, 26-27; 597 NW2d 148 (1999); see also *In re Brown, supra* at 540. "[I]f the statute does not address purely procedural matters, but substantive law, the statute prevails." *People v Conat,* 238 Mich App 134, 163; 605 NW2d 49 (1999), citing *McDougall, supra* at 37.

We believe that MCL 712A.13 reflects our Legislature's policy considerations concerning the necessary requirements for obtaining jurisdiction over a parent or guardian of a juvenile. Because the issue of service is a jurisdictional one, the statutory provision governs. The plain language of the statute contains no specific requirements concerning what types of evidence a court must consider in determining whether substituted service is indicated, or the form in which the evidence must be received. By its silence, MCL 712A.13 permits a court to evaluate evidence other than testimony or a motion and affidavit when determining whether notice can be made by substituted service. We believe that the recently amended court rule requirements now found in MCR 3.920(B)(4)(b) are restrictions affecting jurisdiction in matters that are usually time-sensitive and for which the Legislature's policy is to seek prompt resolution for the sake of the juvenile involved and, as such, conflict with MCL 712A.13. Therefore, the statute prevails.

In *In re Mayfield, supra* at 232, which this Court decided when both MCL 712A.13 and former Rule 5.920 were in effect, this Court held that the form of substituted service effectively complied with MCL 712A.13. In making this ruling, the *Mayfield* Court discussed the several attempts made to serve respondent by first-class mail that were returned marked " 'no such number,' effectively accomplishing the same purpose as registered mail sent to the last known address." *In re Mayfield, supra* at 235; see *id.* at 232-233. The details about these attempts apparently came from documents in the lower court file, such as returned first-class letters. There was no mention of testimony about the failed attempts at personal service. While it is possible that these documents were discussed in testimony or a motion and affidavit that are not mentioned in the

opinion, *In re Mayfield* nonetheless provides support to petitioner's argument that a trial court can rely upon documents in the lower court file when determining the propriety of substituted service under MCL 712A.13.[4] In addition, the Court relied on the rule that the jurisdiction of the probate court must be determined solely by reference to the statutes. *In re Mayfield, supra* at 230.

From the plain language of MCL 712A.13, and as it was applied in *In re Mayfield*, it is evident that a trial court is permitted to consider evidence other than testimony or motions and affidavits when determining whether personal service was impracticable. Therefore, we conclude that the trial court in the present case did not err in relying on petitioner's motion, as well as the proofs of nonservice provided in the lower court file, when it decided that personal service was impracticable.

Respondent also argues that the trial court failed to obtain jurisdiction to terminate her parental rights. We find respondent's argument unavailing where, as pre-

---

[4] We also observe that two unpublished opinions of this Court are consistent with this analysis. In *In re Woods*, unpublished opinion per curiam of the Court of Appeals, issued May 19, 2000 (Docket No. 218954), in which the Court held that the statutes, court rules, and Michigan case law do not require that attempts to personally serve a party be completed before the court authorizes the commencement of substituted service. In citing this case, petitioner points out that the trial court was not required to hear any testimony or receive any documentation regarding specific attempts to serve respondent before its order for substituted service. *In re Woods* is on point because the trial court in this case made the order for service by publication before the last attempt to personally serve respondent was made by the Michigan State Police fugitive team. In another unpublished opinion, this Court clearly stated that it was relying on documents in the lower court file when it ordered substituted service. *In re DH*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2002 (Docket No. 233999). Of course, unpublished opinions are not precedentially binding. MCR 7.215(C)(1).

viously stated, the trial court did not err in its method for ordering substituted service, and where the record clearly reflects the trial court's satisfaction that personal service on respondent was impracticable, MCL 712A.13, considering that her whereabouts were unknown, that multiple attempts to personally serve her were undertaken, and that she appeared to be avoiding service.

In light of our conclusions, we need not reach respondent's further arguments concerning waiver or cure of defect in service.

Affirmed.