*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* THURMOND-WITHERSPOON, Minors.

UNPUBLISHED
September 12, 2019

No. 347401
Oakland Circuit Court
Family Division
LC No. 15-831219-NA

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

The circuit court terminated respondent-father's parental rights to his now 13 and 10-year-old daughters based on his failure to visit, contact, or support them, even after he was placed on notice that his parental rights were in jeopardy. On appeal, respondent contends that the Department of Health and Human Services (DHHS) failed to properly serve him with notice of the proceedings. He further challenges the evidence supporting the termination decision. We discern no error and affirm.

## I. BACKGROUND

Respondent's daughters—NT and AT—have been in the care of their mother since their birth. Respondent and the children's mother separated when the children were five and two. He went on to have three other children with two other women and moved from Pontiac to Jackson. Respondent claims that he exercised frequent parenting time with his daughters and kept in contact through Facebook. The children's mother, however, asserted that respondent had seen his daughters approximately twice since the separation. Respondent also had not consistently made child support payments, amassing an arrearage of over $20,000.

The current child protective proceedings arose because the children's mother had married a man who physically abused her, her daughters, and the young son they shared. The DHHS successfully petitioned for the termination of that man's parental rights to his son. The children and their mother moved in with the maternal grandmother and the DHHS provided mother services. Respondent was in the Macomb County Jail at the time serving a sentence for failure to support. A DHHS caseworker visited respondent in the jail, notified respondent of the proceedings, and provided her contact information. Respondent advised the caseworker that she could contact him through his grandmother upon his release. On the day of respondent's release,

respondent made a surprise visit to the children's home. According to the children's mother, respondent only wanted to use the telephone and did not see his daughters. At that time, the mother told respondent that he had done "something . . . wrong, that [he] was being investigated, and that [the DHHS was] trying to take [his] rights away."

Despite his knowledge of the child protective proceedings, awareness that he was in danger of losing his parental rights, access to the caseworker's contact information, and presentation of his grandmother's contact information to the agency, respondent travelled to Jackson to live with the mother of his youngest children without ever contacting or updating the DHHS. Respondent's assigned counsel did not know how to reach him. And although the children's mother knew what city respondent was in, she had no contact information for him and did not know his girlfriend's last name. The caseworker searched for respondent in the Oakland and Macomb County Jails and sent letters to his recently known addresses. The caseworker secured respondent's alleged phone number from his mother and left several text and voice messages, but never received a return call. Respondent's mother indicated that she had not seen NT and AT in approximately two years and believed her son had not either. The worker spoke to respondent's grandmother, who claimed she did not know respondent's whereabouts. The worker even searched the White Pages, the Michigan Statewide Automated Child Welfare Information System, the Michigan Bridge card system, Secretary of State records, the Friend of the Court, and Facebook, but could not locate respondent. Ultimately, the circuit court allowed the DHHS to serve respondent by publication. The court also ordered respondent to participate in reunification services despite his absence.

The circuit court took jurisdiction over the children based on respondent's absence and failure to pay child support. After continued failed attempts to locate respondent, the court authorized a supplemental petition seeking termination of respondent's parental rights. Following amendment, the DHHS sought termination under MCL 712A.19b(3)(a)(*ii*), (c)(*i*) and (*ii*), (g), and (j).

By the time of the November 19, 2018 termination hearing, the DHHS had located respondent because he was in the Oakland County Jail for failure to pay child support and had pending charges in Washtenaw County on human trafficking and criminal sexual conduct charges. The termination hearing was therefore respondent's first appearance in the proceedings. Respondent took the stand and insisted that he had been present in his children's lives. He further asserted that his outstanding warrants for failure to pay child support prevented him from securing employment, compounding his financial obligations. The court subsequently terminated respondent's parental rights on various grounds cited in the amended supplemental petition.

Respondent now appeals.

II. SERVICE

Respondent first contends that the court lacked personal jurisdiction over him because it permitted alternative service in violation of MCL 712A.12 and MCL 712A.13. We review de novo jurisdictional and statutory interpretation issues. *In re SZ*, 262 Mich App 560, 564; 686

NW2d 520 (2004). We review for clear error the circuit court's underlying factual findings. See *In re Adair*, 191 Mich App 710, 714; 478 NW2d 667 (1991).

MCL 712A.12 provides that, after a petition has been filed, notice of the petition and of the time and place appointed for the hearing must be completed by personal service to the parent or guardian before the hearing. Failure to comply with this statutory requirement is "fatal to the jurisdiction" of the court. *In re Brown*, 149 Mich App 529, 535; 386 NW2d 577 (1986). However, MCL 712A.13 provides an exception to this rule. Specifically, "if the judge is satisfied that it is impracticable to serve personally such summons or the notice provided for in [MCL 712A.12], he may order service by registered mail addressed to their last known addresses, or by publication thereof, or both, as he may direct."

The record is more than adequate to support that personal service was impracticable in this case. Respondent claims that he should have been easy to locate as he was living with the mother of his youngest two children in Jackson. However, respondent's own relatives did not know he was living there. The caseworker searched *several* government-maintained databases and social media in her efforts to track down respondent, in addition to calling all known phone numbers and sending letters to recently known addresses. The caseworker went above and beyond the call of duty before asking to employ substitute service. Accordingly, the circuit court properly permitted service by publication under MCL 712A.13.

## III. STATUTORY GROUNDS

Respondent further challenges the evidentiary support for the statutory grounds for termination. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). The court's termination decision followed the filing of an amended supplemental petition. When termination is sought in a supplemental petition based on new grounds, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *Rood*, 483 Mich at 90-91. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (cleaned up).[1] "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

The circuit court terminated respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (g), and (j), which provide:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

(a) The child has been deserted under any of the following circumstances:

* * *

(*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The record evidence supports termination under factor (a)(*ii*). There was conflicting evidence about respondent's presence in NT's and AT's lives. Although respondent claimed that he saw and contacted the subject children frequently, the children told the caseworker that they rarely saw their father and had no bond with him. Respondent's mother expressed that respondent had not seen his daughters in more than two years. The children's mother indicated that respondent had seen his daughters only once or twice since their separation. Even after learning of the child protective proceedings, the children's mother asserted, respondent made a surprise visit to her home to use the telephone, but took no time to see his children. "[U]nder the clear error standard, regard shall be given to the special opportunity of the trial court to judge the

-4-

credibility of the witnesses who appeared before it." *Rood*, 483 Mich at 112 (cleaned up). We discern no ground to interfere with the lower court's assessment that respondent abandoned NT and AT for more than 91 days.

However, factor (a)(*ii*) has a second component: that the parent has not sought custody during the 91-day period. Respondent contends that this factor should not apply where the children remained in the care of their custodial parent and the noncustodial parent was unaware of the proceedings against him. However, the evidence demonstrates that respondent was aware that his parental rights were in jeopardy. The caseworker visited respondent in the Macomb County Jail, advised him of the proceedings, and provided her contact information. The children's mother claimed that she told respondent that he was being "investigated" in the child protective proceeding and that his parental rights were at risk. Despite this notice, respondent made no attempt to contact the caseworker or to participate in the proceedings. Moreover, there is no exception in the statute or caselaw for noncustodial parent respondents whose children remain with the custodial parent. The fact is that respondent did not seek custody of his children, or even attempt to see them, during the year of this proceeding. Failure "to make any substantial effort to communicate with [the child] or obtain assistance in regaining custody of [the child] for a period well beyond the statutory period" constitutes grounds for termination under this factor. *In re TM*, 245 Mich App 181, 194; 628 NW2d 570 (2001).

Termination was also supportable under factor (c)(*i*). The conditions that led to adjudication in relation to respondent were his failure to see the children for more than two years, failure to make any plan for providing care and custody for the children after the caseworker's jailhouse visit but before the initial petition was filed against him, and failure to provide child support for an extended period. These conditions continued to exist at the time of the termination hearing and respondent demonstrated no ability to rectify them within a reasonable time. First, as found by the court, respondent failed to contact his children throughout these proceedings. Second, respondent still had no plan to provide proper care and custody for his children. Respondent admitted that he had been homeless throughout the proceedings and had no concrete plans for securing housing. Respondent was then facing serious felony charges in Washtenaw County that had yet to be resolved, limiting his ability to take custody of his children. Moreover, respondent had no plan to provide for his children financially. He was aware of his outstanding child support debts for his five children and that several bench warrants had been issued in this regard. However, respondent remained unemployed because, he claimed, the bench warrants for nonsupport had made him unemployable. Respondent also claimed that he was terminated from a prior job because the employer "felt bad for me" that more than half of his paychecks were garnished for child support and health insurance for his children. On this record, there is no evidence that respondent will be able to rectify any of the conditions that led to adjudication.

We question the propriety of terminating respondent's parental rights under factors (g) and (j) as there is no record indication that respondent was financially able to provide proper care and custody for his children and as there is no indication that he has ever harmed any of his children. Termination under MCL 712A.19b(3) need only be supported by one statutory factor, however, and the DHHS established grounds for termination under two. As such, respondent is not entitled to relief. See *In re Powers*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

-5-

## IV. BEST INTERESTS

Respondent further argues that termination of his parental rights was not in the best interests of NT and AT. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (cleaned up). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *White*, 303 Mich App at 714. Ultimately, "the focus at the best-interest stage [is] on the child, not the parent." *Moss*, 301 Mich App at 87.

NT and AT reported to the caseworker that they had not seen their father for at least two years and had no bond with him. Respondent did not visit the children during these proceedings, nor did he participate in services or demonstrate any type of parenting ability. Respondent could not provide the children with permanency or stability as he fluctuated between homelessness and incarceration and remained unemployed. Respondent may have a personal desire to retain his parental rights, but he cannot counter the evidence that termination was in the children's best interests.

We affirm.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly