*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* P. J. SCHUT, Minor.

UNPUBLISHED
November 22, 2022

No. 360452
Kalamazoo Circuit Court
Family Division
LC No. 2019-000182-NA

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating respondent's parental rights to his minor child, PS, under multiple statutory grounds. Finding no errors warranting reversal, we affirm.

## I. BACKGROUND

This case arises from a domestic-violence incident that occurred in Kent County when PS was an infant. The child was being held by his mother when respondent shoved the mother into a sink. PS was taken to an emergency room and discharged without concerns. However, examination of PS by a child abuse doctor about a month later showed that PS was healing from a broken collar bone, three broken ribs, and right ulnar diaphysis, which were consistent with the domestic-violence incident.

The Department of Health and Human Services (DHHS) petitioned the Kent Circuit Court to take jurisdiction over PS and terminate respondent's parental rights. In addition to the domestic-violence incident, the petition alleged physical neglect and improper supervision of PS. At the May 2019 adjudication hearing, for which respondent was not present, DHHS did not seek termination of respondent's parental rights and instead requested that he participate in a case service plan aimed toward reunification. The court assumed jurisdiction over PS and entered an

-1-

order transferring the case to Kalamazoo Circuit Court because PS was living with the mother in Kalamazoo County.[1]

Respondent was incarcerated for the domestic-violence incident. After his release from jail in November 2019, DHHS offered respondent various services and referrals to address the barriers to reunification, which included domestic violence, substance abuse, emotional stability and parenting skills. Respondent subsequently reported moving to South Bend, Indiana to be closer to family support. DHHS encouraged respondent to seek services in Indiana, and he eventually participated in some services there. At times, respondent demonstrated periods of progress with the case service plan. Ultimately, however, his participation in services remained inconsistent, and he completed very few of the recommended services. He missed the majority of his drug screens throughout the case, and he tested positive for methamphetamine as late as two months before the termination hearing.

The termination hearing was held in October 2021, nearly $2^1/_2$ years after the dispositional phase began. Respondent argued that termination was not proper because he was still completing services, some of which were delayed for reasons outside of his control. The trial court found that appropriate referrals were made by caseworkers and that respondent had failed to follow through with them. The court further found that clear and convincing evidence supported terminating respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), MCL 712A.19b(3)(c)(*i*) and (*ii*), MCL 712A.19b(3)(g), MCL 712A.19b(3)(j), and MCL 712A.19b(3)(*l*),[2] and that termination was in PS's best interests.

## II. REASONABLE EFFORTS

Respondent first argues that the trial court erred by finding that DHHS made reasonable efforts to reunify the family because it did not adequately accommodate his out-of-state residency, employment schedule, and mental health diagnoses. We disagree.[3]

"Absent aggravating circumstances, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 3 (quotation marks and citation omitted). "As part of these reasonable efforts, the Department must create a service

---

[1] The mother passed away during the pendency of the proceedings.

[2] Although not argued on appeal, we note that the trial court properly found that at least one statutory ground was met and that termination was in PS's best interests. See *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012). However, the trial court erred when it applied an outdated version of MCL 712A.19b(3)(*l*).

[3] We review for clear error a trial court's finding that DHHS made reasonable efforts to reunify the family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A trial court's finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake was made. See *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "[T]here exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502 & 358503); slip op at 3 (quotation marks and citation omitted).

Respondent emphasizes on appeal that his work schedule and transportation issues prevented him from attending parenting sessions. However, throughout the case DHHS caseworkers testified that they were careful to work around respondent's schedule. DHHS worked with respondent to plan parenting times specifically in the mornings when he worked evenings. DHHS also devised a plan to meet in person one week and virtually the next week, to accommodate respondent's work and transportation availability when his job situation changed. Respondent takes issue with the trial court's June 2021 order that in-person visits be twice a week. However, this was done because the caseworker was concerned that there was a lack of bond between respondent and the child. At this point, the child was placed in foster care in Grand Rapids, but the visits continued to be conducted in Kalamazoo, which was roughly half-way between Grand Rapids and South Bend. While respondent argues that the visits should have been conducted closer to Indiana, that would have increased PS's travel time.

The record shows that DHHS made additional efforts to accommodate respondent's out-of-state residency. For instance, a Michigan testing site for respondent's drug screens was located only minutes away from respondent's Indiana home. DHHS also offered respondent bus tickets and gas cards for parenting times and drug screens. DHHS admitted that gas cards could not be made available to respondent on at least two occasions because of COVID-19-related staffing issues. But when supplies and staffing allowed, gas cards were given to respondent on numerous occasions. Further, respondent testified that he had enough funds to pay for gasoline on his own. Even if respondent's stated purpose was to save that money for PS, that did not change the fact that those funds were available to him to spend on gas to go see PS or complete a drug screen.

Respondent also argues that DHHS failed to accommodate his diagnoses of major depressive disorder and post-traumatic stress disorder (PTSD). This issue is unpreserved because respondent did not assert in the lower court that DHHS was not adequately accommodating his mental health issues.[4] See *In re Atchley*, ___ Mich App at ___; slip op at 2.

Once the DHHS is aware of a parent's disability, it has an affirmative duty to make accommodations. *In re Hicks/Brown*, 500 Mich at 87-88. Setting aside whether respondent's mental health diagnoses amounted to a disability, respondent argues that additional efforts should have been made to help him find services in Indiana. DHHS attempted to help respondent locate

---

[4] Unpreserved errors are reviewed for plain error affecting substantial rights. *In re Sanborn*, 337 Mich App 252, 257; 976 NW2d 44 (2021). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citations omitted).

appropriate counseling services in Indiana. One fell through in part because the service provider did not accept respondent's insurance. DHHS could not work directly with respondent's insurance company in Indiana to learn what providers would be covered; rather, respondent had to communicate with the company directly, which he failed to do. Further, respondent did find service providers in Indiana. Specifically, he began group counseling and treatment programs at Oaklawn Psychiatric Center, but he was discharged for noncompliance. He also participated in group counseling for domestic violence through a different provider, but as of the termination hearing he had not completed that program. Considering that respondent found Indiana providers and failed to complete those services, there is no basis in the record to conclude that he would have benefitted from additional efforts from DHHS on this matter. See *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021) ("When challenging the services offered, a respondent must establish he or she would have fared better if other services had been offered.").

We also conclude that reasonable efforts were made to address respondent's mental health needs. While in jail, respondent underwent a psychological evaluation, which recommended individual counseling and a psychiatric evaluation. As noted, DHHS attempted to help respondent locate appropriate counseling services in Indiana, but there were issues with respondent's insurance. Respondent also stopped participating in services at Oaklawn before individual counseling began. It appears that respondent was referred for a psychiatric evaluation in Kalamazoo. Although he moved to South Bend, he could have traveled to Kalamazoo to participate in the evaluation, as he did for in-person parenting time visits. And contrary to respondent's argument that his major depressive disorder and PTSD caused him to not be able to schedule appointments or complete various tasks, respondent demonstrated his ability to find and contact providers and to participate sporadically with services. Respondent also argues that he should have been given more time to complete services, but the case had been pending for over two years at the time of termination.

In sum, respondent fails to adequately explain how DHHS could have better accommodated his mental health diagnoses. He also does not establish that he would have fared better had additional efforts been made. Accordingly, we are not left with a definite and firm conviction that the trial court erred when it determined that DHHS made reasonable efforts to reunify respondent and PS.

## III. NOTICE OF ADJUDICATION

Respondent also argues that he was deprived of due process because he was not given proper notice of the adjudication hearing.[5]

"A parent of a child who is the subject of a child protective proceeding is entitled to personal service of a summons and notice of proceedings." *In re SZ*, 262 Mich App 560, 565; 686

---

[5] We review this unpreserved claim for plain error affecting substantial rights. See *In re Sanborn*, 337 Mich App at 257. Whether child protective proceedings complied with a parent's right to due process is a question of law that we review de novo. See *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014).

NW2d 520 (2004). Due process requires notice of the proceedings and the opportunity to be heard. *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009).

At the adjudication, the trial court stated that respondent was personally served at the preliminary hearing with the petition and notice of the adjudication hearing. Respondent disputes that this occurred, noting that the register of actions does not indicate whether he attended the preliminary hearing. The March 28, 2019 preliminary hearing was not transcribed. However, the record supports the conclusion that respondent was present for the hearing and served with notice as stated by the trial court. The order after the preliminary hearing includes respondent's name in the list of people who received personal service of the order, which included the summons for the adjudication hearing. Further, respondent's attorney was present for the adjudication and did not dispute the trial court's statement that respondent was present for the preliminary hearing and properly served. Nor did the prosecutor, the mother's attorney, or the lawyer-guardian ad litem. In addition, respondent was notified of the adjudication hearing via mail.

In sum, the record does not support respondent's contention that he was not properly served with notice of the adjudication. Accordingly, he fails to establish that his due-process rights were violated or that he is entitled to relief under plain-error review.[6]

Affirmed.

/s/ Michael J. Kelly
/s/ Douglas B. Shapiro
/s/ Sima G. Patel

---

[6] Respondent also argues that he was not advised of his rights to challenge the assumption of jurisdiction, as required by MCR 3.972(F)(1). As respondent acknowledges, the relief for this error is that he is allowed to challenge the assumption of jurisdiction in this appeal. See MCR 3.972(G).