*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. G. J. JOHNSON, Minor.

UNPUBLISHED
February 16, 2023

No. 361877
Kalamazoo Circuit Court
Family Division
LC No. 2017-000379-NA

Before: SHAPIRO, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child under MCL 712A.19b(3)(a)(*ii*) (parent deserted child for 91 or more days), MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood that child will be harmed if returned to the parent).[1] We reverse and remand for further proceedings because mother was not provided with proper notice of the termination hearing.

## I. FACTUAL BACKGROUND

In August 2017, mother was arrested for aggravated/felonious assault while the child was in her care. The Department of Health and Human Services (DHHS) alleged that the child came under the court's jurisdiction because of his ongoing exposure to mother's substance-abuse issues and criminal behavior. The trial court ordered the emergency removal of the child and placed him with the DHHS.

From August to early November 2017, mother attended five hearings. Beginning in late November 2017, mother failed to appear for hearings and maintained inconsistent and difficult communication with the DHHS.

---

[1] Although the child's father was also a respondent below, the trial court did not terminate his parental rights.

After January 2018, mother was absent without leave from a probationary program, and, despite providing a local address in February 2018, mother appeared to have left the state. The parties struggled to reach mother via mail, call, text, and social media.[2] In April 2018, the DHHS filed an affidavit detailing its efforts to locate mother.

In October 2018, mother provided an address in Nevada. Within months, court orders sent to that address were returned as undeliverable and communication efforts failed, even as mother filed a motion to dismiss.

In March 2019, the DHHS filed another affidavit regarding its efforts to locate mother. In May 2019, mother provided an address in Utah. By October 2019, the DHHS again did not know mother's whereabouts and filed another affidavit regarding its efforts to locate mother.

In March 2020, the DHHS filed yet another affidavit detailing its efforts to locate mother. In June 2020, the maternal grandmother provided contact information for mother, but mother failed to communicate with the DHHS despite its efforts to locate her. At the end of 2020, court orders sent to the Utah address were returned as undeliverable. A court employee emailed the caseworker and asked for a notice of current address or an affidavit of efforts to locate the absent parent.

During a permanency planning hearing in April 2021, the DHHS reported that despite its efforts to contact mother, she was not participating in services and had not inquired about the child. The DHHS recommended termination of mother's parental rights. Additional court orders were returned and a court employee emailed the caseworker for an updated address. On July 12, 2021, the DHHS filed an affidavit describing the numerous efforts that it made to contact mother, including messaging several Facebook accounts in mother's name without response.

In September 2021, the DHHS petitioned the trial court to terminate mother's parental rights. For mother's address, the petition directed the court to its "Affidavit of Reasonable Efforts" and there was a handwritten notation, reading "UNK" with a check mark. As to mother, the petition alleged that she had abandoned her child, not had any contact with him since August 2018, and had not participated in or completed any services listed in her parent-agency treatment plan.

On October 4, 2021, the trial court issued a summons that ordered mother to appear for a hearing to terminate her parental rights on November 5, 2021.[3] That same day, a court employee signed a motion for alternate service. It stated that "due to COVID-19, the unavailability of a process server, court closure and social distancing, personal service is impractical." The motion requested the court to order service by alternate means, representing that mother's last-known home address was an apartment on Andover Drive in Kalamazoo and that the court employee

---

[2] Calling mother often proved unsuccessful because her phone was turned off or her number was inactive. If the DHHS made contact, mother was not always forthcoming about her whereabouts or contact information. At times, mother left threatening messages or conveyed inaccurate information. And, even when mother's contact information was updated, by either mother herself or another party, mother failed to maintain contact or respond.

[3] A notice of hearing regarding the termination hearing was sent to mother's attorney.

"believe[d]" that the "home" address provided was "correct." The trial court granted the motion for alternate service ex parte, finding that personal service of the summons upon mother was impracticable or could not be achieved. The trial court further ordered that service be made by first-class mail to the "last known address provided to the Court." A court employee then mailed the summons, the petition for termination of parental rights, the motion for alternate service, and the order granting alternate service to the Andover address.

The November termination hearing date was adjourned to January 12, 2022. Notice was mailed to mother at the Andover address.

On January 7, 2022, the DHHS filed another affidavit, explaining its efforts to locate mother. The affidavit stated that "[t]he current address of the absent parent is unknown and cannot be determined after diligent efforts."

The January 2022 hearing date was again adjourned to April 19, 2022. Notice of the adjournment and other documents were mailed to the Andover address.

Although the summons, termination petition, motion for alternate service, order granting alternate service, and one of the adjournment notices were not returned, the notice of the January 27, 2022 adjournment and another court order were returned as undeliverable in February 2022. A court employee then emailed the caseworker about submitting a notice of mother's current address or an affidavit of the efforts that had been made to locate mother.

On April 15, 2022, the DHHS filed a notice of current address for mother, reflecting that "mother sent the worker her current mailing address via social media messenger" on April 11. Mother provided an address in Missouri.

During the April 19, 2022 termination hearing, the foster-care specialist testified that days before trial, she reached mother via social media after learning of mother's exact profile from the child's father. The specialist asked for mother's updated telephone number and address, and whether mother would be open to meeting to go over case matters, wanted to engage in parenting time, and if she was engaged any services. Mother provided an updated telephone number and an in-state address[4] as well as one in Missouri. Mother added that she was currently out of the state, had unresolved criminal matters that she needed to address, and wanted to visit with the child. The specialist immediately attempted to call mother via the number provided; however, it was out of service. The specialist also inquired whether mother had an alternate telephone number and was amenable to meeting via an online service, but mother did not respond. Nor did mother follow up to arrange for contact or visitation with the child.

Mother was not present at the termination hearing, but was represented by counsel. The trial court found four statutory grounds to terminate mother's parental rights were proven and that termination was in child's best interest.

---

[4] No information is contained in the record regarding the in-state address.

Mother appeals.

## II. NOTICE

### A. PRESERVATION OF ISSUE

Generally, "issues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Mother did not contest the trial court's decision to permit alternate service by first-class mail, and, therefore, this issue is not preserved for appeal.

### B. STANDARD OF REVIEW

Typically, "whether child protective proceedings complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo." *Id*. Additionally, issues of personal service and jurisdiction are generally reviewed de novo. *In re Terry*, 240 Mich App 14, 20; 610 NW2d 563 (2000). But unpreserved issues, either constitutional or nonconstitutional, are reviewed for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). And reversal is only warranted when the plain error "seriously affect[ed] the integrity, fairness, or public reputation of judicial proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

Issues regarding the interpretation and application of statutory provisions are reviewed de novo. *In re Beers*, 325 Mich App 653, 680; 926 NW2d 832 (2018). Likewise, the interpretation of a court rule is "a question of law that we review de novo." *In re Utrera*, 281 Mich App at 9. A trial court's factual findings, however, are reviewed under the clearly erroneous standard. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

### C. DISCUSSION

Mother does not challenge the trial court's jurisdiction or the trial court's conclusions concerning the statutory factors or the child's best interests leading to the termination of her parental rights. Instead, she argues that the trial court erred by ordering the termination of her parental rights after it failed to provide her with proper notice of the termination hearing. According to mother, the trial court's decision to permit alternate service by first-class mail was not reasonably calculated to provide her notice of the termination hearing. Furthermore, mother did not know how the trial court had obtained the Andover address where it had mailed the notice regarding the termination hearing.

In its appellate brief, the DHHS represented that mother provided the Andover address to the court when she filed a petition for a personal protection order (PPO) on September 15, 2021.[5] The PPO petition was filed by a woman who had the same first and last name as mother; however, it also reflected a different date of birth than mother's and the facts recited described a scenario inconsistent with mother's circumstances. On our motion, we directed appellate counsel for the DHHS to address whether mother had provided the Andover address to the court, and, if not, whether plain error occurred.[6] During oral argument, the DHHS conceded that the Andover address was not mother's, plain error occurred, and reversal was required. We agree.

Parents have fundamental due-process rights in termination of parental rights proceedings. *In re Sanders*, 495 Mich 394, 403; 852 NW2d 524 (2014). Due process in civil cases require notice of the nature of proceedings and an opportunity to be heard. *In re Mayfield*, 198 Mich App 226, 231; 497 NW2d 578 (1993). Consequently, statutes requiring notice to parents must be strictly construed. *Id*.

MCR 3.920(G) provides that "[a]fter a party's first appearance before the court, subsequent notice of the proceedings and pleadings shall be served on that party or, if the party has an attorney, on the attorney for the party as provided in subrule (D), *except that a summons must be served for trial or termination hearing as provided in subrule (B)*." (Emphasis added.) In turn, MCR 3.920(B)(4) states:

> (a) Except as provided in subrule (B)(4)(b), a summons required under subrule (B)(2) must be served by delivering the summons to the party personally.
>
> (b) If the court finds, on the basis of testimony or a motion and affidavit, that personal service of the summons is impracticable or cannot be achieved, the court may by ex parte order direct that it be served in any manner reasonably calculated to give notice of the proceedings and an opportunity to be heard, including publication.

MCR 3.920(B)(2)(b) requires a summons in a child protective proceeding "must be served on any respondent" and that "[a] parent without physical custody must be notified by service as provided in subrule (D), unless the whereabouts of the parent remain unknown after a diligent inquiry." When, however, a trial court fails to meet the requirements of MCR 3.920(B)(4)(b) before ordering substituted service, a trial court's jurisdiction is not endangered so long as the trial court followed the requirements of MCL 712A.13. See *In re SZ*, 262 Mich App 560, 567; 686 NW2d 520 (2004). Under MCL 712A.13, service of a summons may be accomplished by personal service unless the judge is satisfied that such service is impracticable. If so, the judge "may order service by registered mail addressed to [the party's] last known addresses, or by publication thereof, or both, as [the court] may direct." *Id*. Consequently, although MCR 3.920(B)(4)(b) requires a trial court to base its decision for substituted service on testimony or a motion and affidavit, MCL 712A.13

---

[5] We presume that DHHS asks us to take judicial notice of the PPO petition because it was not part of the record below. See MRE 201.

[6] *In re D G J Johnson*, unpublished order of the Court of Appeals, entered February 1, 2023 (Docket No. 361877).

does not attempt to specify, limit, or otherwise define the evidence upon which a trial court can rely when determining whether personal service is impracticable. *In re SZ*, 262 Mich App at 566. To summarize, there are no specific requirements concerning what types of evidence a trial court must consider or the form in which the evidence must be received so long as the trial court adheres to the statutory requirement that the court be satisfied that it is impracticable to serve the summons or the notice personally. See *id.* at 566-569.

The lower court record amply supported the trial court's conclusion that personal service was impracticable. But the record also revealed that the trial court did not direct that mother be served at one of her last known prior addresses or by publication. Instead, service meant for mother was sent to an address belonging to a woman, who shared mother's first and last name, but not her birthday or her circumstances. The first-class mail notice provided was not reasonably calculated to notify mother that the court was holding a hearing to decide whether it would terminate her parental rights.[7] This error was plain. It affected mother's substantial rights. And reversal is required because the failure to provide the requisite notice seriously affected the integrity, fairness, or public reputation of judicial proceedings.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Anica Letica
/s/ Kathleen A. Feeney

---

[7] The adjournment orders were mailed to the Andover address as well, and the adjournment order for the April hearing date was returned.