*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ANDERSON/FERENCE, Minors.

UNPUBLISHED
December 22, 2022

No. 361080
Wayne Circuit Court
Family Division
LC No. 2013-514281-NA

In re FERENCE, Minors.

No. 361085
Wayne Circuit Court
Family Division
LC No. 2013-514281-NA

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

In Docket No. 361080, respondent-mother, B. Bertram, appeals as of right the trial court's order terminating her parental rights to JBA, AAF, and JMF. In Docket No. 361085, respondent-father, M. Ference, appeals the same order as of right to the extent that it terminated his parental rights to his sons, AAF and JMF.[1] The trial court terminated the parental rights of both respondents under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm.

---

[1] The trial court concluded that JBA's legal father was unknown and unascertainable. On June 19, 2018, the trial court terminated the unknown father's parental rights.

# I. DOCKET NO. 361080 (RESPONDENT-MOTHER)

## A. STATUTORY GROUNDS

Respondent-mother first argues that petitioner, the Department of Health and Human Services (DHHS), did not present sufficient evidence to support a statutory ground for termination of her parental rights. We disagree.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated both respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which permit termination of parental rights under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

After reviewing the record, we conclude that the trial court did not clearly err when it terminated respondent-mother's parental rights under these grounds.

The evidence established that in 2013, DHHS removed JMF from respondent-mother's care after both she and the newborn child tested positive for heroin. Respondent-mother was provided with services, and the child was eventually returned to her care in 2014. In 2015, a second child, AAF, tested positive for THC at birth. An investigation by Child Protective Services (CPS) ensued, but this child was permitted to remain in respondent-mother's care. In January 2018, respondent-mother's third son was born and he tested positive for cocaine, opiates, THC, and methadone at birth. At this point, all three children were removed from respondent-mother's care, the court took jurisdiction, and respondent-mother was ordered to participate in services to address her severe substance abuse issues and improve her parenting skills.

Respondent-mother's treatment plan included random drug screening, individual therapy, and substance abuse counseling. There was also testimony that she voluntarily participated in services offered through a methadone clinic that she had been treating at for several years. There is no evidence that respondent-mother benefited from these services. The evidence established that respondent-mother continued to test positive for cocaine and other illegal substances. Indeed, documentary evidence confirmed that virtually every drug screen for months was positive for cocaine, among other substances.

Although there were some delays related to COVID-19 pandemic restrictions, the trial court still allowed respondent-mother an inordinate amount of time to benefit from services. During the nearly four years that the children were in nonrelative foster care, the trial court twice denied permanent-custody petitions, thereby allowing respondent-mother additional time to work toward reunification and overcome her addiction issues. The evidence demonstrated that respondent-mother squandered this opportunity.

There was also clear and convincing evidence that respondent-mother did not improve her parenting skills. In the 2013 case, respondent-mother completed a parenting education class. Although her oldest child at that time was eventually returned to her care, her subsequent conduct confirms that she did not integrate what she had learned into her daily life. During the current case, in lieu of simple parenting classes, respondent-mother was referred to Infant Mental Health Services to provide her with more intensive hands-on assistance. Unfortunately, she was early-terminated from this service for noncompliance. Respondent-mother was also offered weekly visits with her children, but she could not maintain any consistency in this regard. She frequently missed visits, failed to call to confirm, or was a no-show after confirming her attendance earlier in the day. When respondent-mother did attend visits, she struggled to control the children and balance her attention between them. Finally, respondent-mother never adequately addressed her substance abuse issues, which likely contributed to her inability to demonstrate that she could safely parent her children. At the time of termination in 2022, respondent-mother was in no better position to parent the children than when they were removed from her care in January 2018. Indeed, she never progressed beyond supervised parenting time and her parenting time was suspended several months before the termination hearing because of her failure to consistently show up for visits, which was taking a toll on the children's emotional well-being.

Additionally, the record clearly and convincingly supports the trial court's finding that respondent-mother would not be able to rectify her substance abuse issues or improve her parenting skills within a reasonable time considering the children's ages. Respondent-mother was either unwilling or unable to put in the effort necessary to overcome her addictions. Her drug

screens continued to be positive for illegal substances. Her actions during the proceedings further confirmed that the circumstances that brought the children into care were not reasonably likely to be rectified anytime soon. Most significantly, compelling evidence was presented that respondent-mother offered drug screen results purporting to be from her methadone clinic that had been altered to appear as if she was not testing positive for anything other than her methadone and a prescribed medication. Verified documents from the methadone clinic later demonstrated that she was in fact consistently screening positive for cocaine and other illegal substances.

Lastly, the evidence clearly and convincingly showed that the children would be at risk of harm if returned to respondent-mother's care. The drug screens confirmed that respondent-mother was abusing not only cocaine, but several other illegal and dangerous drugs. Her counselor testified that she was addicted to cocaine and opiates. When asked about respondent-mother's ability to maintain a home and care for her children, the counselor opined that there was always a concern when a parent had a substance abuse problem because "the substance can take over the entire person, everything that they think, feel, do, their responsibilities; their drug of choice becomes number one."

Considering the foregoing record, the trial court did not clearly err when it terminated respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Termination is proper under MCL 712A.19b(3)(c)(*i*) where "the totality of the evidence amply support[ed] that [the respondent] had not accomplished any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). That test has been more than satisfied in this case. Further, respondent-mother's failure to meaningfully participate in services and benefit from her treatment plan demonstrated that she could not provide proper care and custody and that the children would be at risk of harm in her care. See MCL 712A.19b(3)(g) and (j). A parent's failure to comply with a court-ordered treatment plan is indicative of neglect and evidence that return of the child to the parent may cause a substantial risk of harm to the child's life, physical health, or mental well-being. *In re Trejo*, 462 Mich at 346 n 3, citing MCR 5.973(C)(4)(b); *In re BZ*, 264 Mich App 286, 300; 690 NW2d 505 (2004). Accordingly, the trial court did not clearly err by finding that clear and convincing evidence supported the cited statutory grounds for termination of respondent-mother's parental rights.

## B. BEST INTERESTS

Respondent-mother next challenges the trial court's finding that termination of her parental rights was in the children's best interests. We find no error in this regard.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the

children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id*. at 87. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

A preponderance of the evidence established that termination of respondent-mother's parental rights was in the children's best interests. Despite being provided with services for four years, after having previously been provided with services in the 2013 child protective proceeding, respondent-mother was unable to provide a safe and stable home environment for her children. Respondent-mother has never demonstrated that she can overcome her addiction and safely parent her three children. Moreover, respondent-mother's actions in attempting to deceive the court by offering altered drug screens is an indication that she would conceal her drug use rather than lead a substance-free lifestyle for the betterment of herself and her children.

By contrast, all three children were in stable foster homes, where their needs were being met. Further, all three foster parents had expressed an interest in adopting the child in their care, and the foster parents were present at several hearings, evidencing their dedication to the children. Conversely, respondent-mother was absent from several hearings, even when her parental rights were in jeopardy. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts*, 297 Mich App at 41-42. It is clearly apparent that the children had been placed in stable homes where they were progressing and that their progress could continue because the foster parents were willing to provide permanency for the child in their care.

At the time of termination, the children had been in care for four years. For the oldest child, JMF, this was the second time his life had been disrupted and upended because of respondent-mother's instability. The youngest, JBA, had been in foster care his entire life. Indeed, his foster home was the only home he had ever known. There was testimony that the middle child, AAF, was firmly bonded with his foster parents. These children had waited an inordinate amount of time for permanence. Termination was the best avenue by which the children could achieve stability, permanence, and finality. Accordingly, the trial court did not clearly err when it found that termination of respondent-mother's parental rights was in the children's best interests.

## II. DOCKET NO. 361085 (RESPONDENT-FATHER)

For his only issue on appeal, respondent-father argues that the trial court lacked personal jurisdiction over him because he was not personally served with the petition and the court failed to make a finding that personal service was impracticable before permitting service by publication. Therefore, respondent-father argues, the order terminating his parental rights is void. We reject this claim of error.

Preliminarily, because respondent-father did not raise the issue of ineffective service or lack of personal jurisdiction in the trial court, this issue is unpreserved. We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"A parent of a child who is the subject of a child protective proceeding is entitled to personal service of a summons and notice of proceedings." *In re SZ*, 262 Mich App 560, 564-565; 686 NW2d 520 (2004). In general, "failure to provide notice of a termination proceeding hearing by personal service as required by statute, MCL 712A.12 . . . , is a jurisdictional defect that renders all proceedings in the trial court void." *In re Atkins*, 237 Mich App 249, 250-251; 602 NW2d 594 (1999). However, a trial court may permit alternative service, if personal service is impracticable. MCL 712A.13. "Substituted service is sufficient to confer jurisdiction on the court." *In re SZ*, 262 Mich App at 565. When determining whether personal service would be impractical, the trial court must determine if reasonable efforts were made to locate a respondent. *In re Adair*, 191 Mich App 710, 714; 478 NW2d 667 (1991).

MCL 712A.13 governs substitute service. *In re SZ*, 262 Mich App at 566. This statute provides, in relevant part:

> Service of summons may be made anywhere in the state personally by the delivery of true copies thereof to the persons summoned: Provided, That if the judge is satisfied that it is impracticable to serve personally such summons or the notice provided for in the preceding section, he may order service by registered mail addressed to their last known addresses, or by publication thereof, or both, as he may direct. It shall be sufficient to confer jurisdiction if (1) personal service is effected at least 72 hours before the date of hearing; (2) registered mail is mailed at least 5 days before the date of hearing if within the state or 14 days if outside of the state; (3) publication is made once in some newspaper printed and circulated in the county in which said court is located at least 1 week before the time fixed in the summons or notice for the hearing.

Also relevant to this issue is MCR 3.920(B)(4)(b), which states:

> If the court finds, on the basis of testimony or a motion and affidavit, that personal service of the summons is impracticable or cannot be achieved, the court may by ex parte order direct that it be served in any manner reasonably calculated to give notice of the proceedings and an opportunity to be heard, including publication.

In this case, CPS received the abuse complaint in January 2018, after JBA tested positive for cocaine and other illegal substances at birth. The CPS worker, Latosha Sayle, testified that a family team meeting was held on January 23, 2018. Respondent-father was not invited to this meeting because Sayle was unaware of his identity before the meeting. After the meeting, however, Sayle contacted respondent-father and advised him of the February 8, 2018 preliminary hearing date. During their conversation, respondent-father indicated that he would not allow CPS access to his home to assess whether it was suitable for placement. Respondent-father did not appear at the February 8, 2018 preliminary hearing. However, respondent-mother was present and she confirmed that respondent-father still lived on Central Street in Detroit. Sayle also testified regarding her communications with respondent-father and his failure to cooperate with the investigation. At the conclusion of the preliminary hearing, the referee ordered "personal service, certified mail, and publication on [respondent-father]."

On February 13, 2018, a summons, petition, and order to appear on February 28, 2018 was sent by regular and certified mail to respondent-father's Central Street address. The certified mail was returned to sender unclaimed on March 6, 2018. There is no indication that the summons sent by regular mail was similarly returned to sender as undeliverable. On February 16, 2018, personal service of the summons and complaint was attempted on respondent-father at the Central Street address. According to the verification of attempted service, the process server posted a card on the premises. Sometime later, the process server apparently received a response to that card because he noted in his verification of attempted service: "rec call from father Def. don't live here."

Respondent-father did not attend the February 28, 2018 pretrial hearing. During the hearing, counsel for petitioner noted that respondent-father was not at the hearing and that the address in the petition was correct. Thereafter, the court granted counsel's request for "all forms of service on [respondent-father]."

On March 2, 2018, notice by publication was given of the March 27, 2018 hearing on the petition. In addition, a copy of the summons and petition was sent by certified mail to respondent-father at his Central Street address on March 7, 2018. The certified mail was deemed undeliverable on April 2, 2018. Moreover, on March 10, 15, and 20, 2018, a court officer attempted to personally serve a summons and complaint on respondent-father with no success. Respondent-father did not appear at the March 27, 2018 bench trial, but the court noted that service by publication was effectuated on March 2, 2018.

On appeal, respondent-father simply asserts that the trial court failed to make an explicit finding on the record that personal service was impractical before it authorized service by publication. Of note, he does not argue that personal service was, in fact, practical at the time service by publication was achieved. Indeed, this would be a difficult argument to make because of the verified unsuccessful attempts at personal service on respondent-father. Respondent-father also does not argue that it would have been unwarranted for the court to find that personal service was impracticable. Indeed, there is no indication in the record that personal service would have been practical at the time publication was made considering that the contacts between respondent-father, the CPS investigator, and the process server indicated that respondent-father had no intention of cooperating with service of process.

The trial court did not explicitly state that personal service was impractical, but the record supports that it was impractical considering the unsuccessful efforts at personal services, and there is no requirement in MCL 712A.13 that the trial court explicitly state on the record that personal service is impractical before substituted service may be ordered. In any event, even if there were such a requirement, it is apparent from the record that the trial court found personal service to be impractical. The fact that two referees in consecutive hearings authorized substituted service by publication reflects the court's implicit determination that personal service on respondent-father, who did not appear at any hearing for some time, was impracticable. Moreover, there was sufficient information made available to the referees at both the February 8, 2018 preliminary hearing and the February 28, 2018 pretrial hearing to warrant such a finding. Finally, to the extent that MCR 3.920(B)(4)(b) could be read to imply the necessity of a more explicit finding by the trial court on the record, the statutory language of MCL 712A.13 is controlling. *In re SZ*, 262 Mich App at 567.

In the present case, respondent-father has not demonstrated that the trial court erred or that the court lacked personal jurisdiction over him. Under the circumstance, the trial court properly obtained personal jurisdiction over respondent-father where he was served notice of the petition by publication. See MCL 712A.13; *In re SZ*, 262 Mich App at 565. "Substituted service is sufficient to confer jurisdiction on the court." *Id.* Accordingly, no plain error occurred.

Events that transpired later in the case further confirm that respondent-father actually received notice of the proceeding, an opportunity to be heard, and was personally served with a copy of the petition on at least two occasions.

Respondent-father's adjudication trial went forward on June 19, 2018 in his absence. At the conclusion of the trial, the court found statutory grounds to exercise jurisdiction over AAF and JMF on account of respondent-father's conduct. The court ordered DHHS to prepare a case service plan to facilitate reunification between respondent-father and his two children.

In January 2019, respondent-father attended, for the first time, a hearing in this matter. At the January 22, 2019 dispositional hearing, he was present and counsel was available to represent respondent-father. The assigned attorney would remain respondent-father's appointed counsel throughout the case. The referee noted that respondent-father's "adjudication occurred back in June 19th, 2018 after publication had been effectuated." The court then noted that because neither respondent-mother nor her counsel were present, the dispositional hearing would need to be adjourned. When asked if anyone objected, respondent-father's counsel stated: "I have no objection and the court has given us a date of March the 5th at 9:00 a.m. And that works for counsel and my client will be back on March the 5th." Then, at the conclusion of the January 22, 2019 hearing, respondent-father was personally served with a copy of the petition and notice of the proceedings. The court then continued the matter to March 5, 2019. According to testimony given at a later hearing, following the January 22, 2019 hearing, the caseworker spoke with respondent-father about visiting his children and indicated that she would contact him to schedule parenting time. The caseworker called respondent-father at the telephone number he provided, but he never returned her calls.

Respondent-father did not attend the March 5, 2019 dispositional hearing. At the outset of the hearing, respondent-father's counsel noted that respondent-father was notified of the date of the hearing at the January 2019 hearing. Counsel also indicated that she had notified respondent-father by mail of the date. The caseworker called respondent-father after the hearing and explained the services available and that referrals would be made. Respondent-father told the caseworker that he did not want to do any services.

On July 9, 2019, the first supplemental petition seeking termination of respondents' parental rights was filed. The petition documented the efforts to locate and engage respondent-father. The petition alleged that respondent-father had not maintained contact with the caseworker since January 22, 2019. DHHS conducted searches on Facebook, Bridges, and Department of Corrections' databases in an effort to locate respondent-father. According to a search of the penal system databases, respondent-father was not incarcerated at the time the supplemental petition was filed. DHHS also attempted to contact respondent-father by phone, but the call was not returned. DHHS sent letters to respondent-father's last known address, but no response was received. On January 21, 2019, CPS visited respondent-father's last known address, but no one answered.

DHHS also spoke with respondent-mother in an effort to communicate with respondent-father, but this too was unsuccessful. The summons and supplemental petition was sent by certified mail on August 15, 2019. Personal service was attempted at respondent-father's Central Street address on August 21, 2019. At the September 6, 2019 pretrial hearing that followed the filing of the July 9, 2019 supplemental petition, the court again authorized all forms of service, including by publication. On August 16, 2019, service was made by publication.

After the July 2019 supplemental petition was denied by the court in September 2019, DHHS filed another supplemental permanent-custody petition on July 28, 2020. It was this petition that was ultimately heard and culminated in the termination of respondent-father's parental rights. Respondent-father attended the August 3, 2020 pretrial Zoom hearing that followed in front of the referee. In fact, he was with respondent-mother at the time of the hearing. Respondent-father's counsel indicated that he had not received a copy of the supplemental petition. At that point, in response to the trial court's request, respondent-father reported his e-mail address. The matter then went off the record to permit counsel an opportunity to e-mail the petition to respondent-father. When the hearing resumed, the court asked respondent-father if he had received a copy of the petition, to which respondent replied, "yes." Then counsel acknowledged that service in this manner constituted sufficient legal service. Further, counsel waived a formal reading of the petition. At the conclusion of the hearing, the trial court indicated that respondents had both been served electronically with a copy of the supplemental petition.

Respondent-father was also present by Zoom when the pretrial hearing resumed on August 5, 2020. At that time, respondents asked for an in-person hearing on the supplemental petition. Respondent-father's counsel then requested that the court confirm that respondent-father had received the petition that was e-mailed during the hearing two days earlier. Respondent-father was sworn in and testified that he received a copy of the petition that petitioner sent to respondent-mother. He then indicated that the petition e-mailed two days earlier "never came to my phone but I went over it." Respondent-mother's counsel then explained that at the earlier hearing, the petition was e-mailed to both respondents and that respondent-mother and respondent-father were together at the time the e-mails were sent during the hearing. Respondent-father then acknowledged "for the record" that he had received the petition. From the foregoing, the trial court concluded that respondent-father had received and reviewed the supplemental petition. Nonetheless, before the hearing concluded, respondent-father's counsel requested that respondent-father repeat his e-mail address because when she e-mailed the petition to him during the hearing on August 3, 2020, the e-mail "bounced." At that point, respondent-father indicated that the one he gave was the only e-mail address he had. When the court asked respondent-father to spell out his e-mail address, respondent-father indicated that he had already provided it. Before respondent-father clarified the confusion over his e-mail address his counsel stated, "That's okay, your Honor, let's move on." The court did, however, confirm that respondent-father continued to reside at the home on Central Street. The court then scheduled a continued pretrial hearing for November 5, 2020.

Not only do the foregoing events demonstrate that respondent-father was properly and actually served, the record confirms that respondent-father waived a challenge to the finding of personal jurisdiction. Although respondent-father did not appear at many of the hearings, he was present at the January 22, 2019 dispositional hearing, the August 3, 2020 pretrial hearing, and the August 5, 2020 pretrial hearing, and he testified at the November 10, 2021 termination hearing.

At all of these hearings, not only was respondent-father present, he was represented by counsel. At no time did he raise any objection to the court's jurisdiction over him, and he did not decline to testify at the termination hearing.

In *In re Gillespie*, 197 Mich App 440, 446-447; 496 NW2d 309 (1992), this Court held:

> However, given that a probate court is to consider all hearings, from the initial adjudication or disposition hearing to the termination hearing as a single continuous proceeding, *In re LaFlure*, 48 Mich App 377, 391; 210 NW2d 482 (1973), given that respondent does not challenge the notice he received with regard to the review hearings or the termination hearing, given that respondent appeared at the termination hearing without claiming a lack of personal service, given the disruption collateral attacks of the nature of the attack raised in this case cause to the placement process, and given a child's need for permanency, stability, and finality, we believe that the general rules governing waiver of objections regarding service of process should apply in termination proceedings where a parent or parents appear at the termination hearing, challenge the petition for termination, and fail to challenge or raise the issue of lack of service of process arising out of prior proceedings.

Applying the foregoing rationale, respondent-father waived the right to appellate review of his jurisdictional claim.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett

-10-